No. 85-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

RICHARD A. LINTON,

Claimant and Appellant,

-vs-

CITY OF GREAT FALLS, Employer,
and
STATE COMPENSATION INSURANCE FUND,

Defendant and Respondent.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bottomly & Gabriel; Joe Bottomly, Great Falls,
Montana

For Respondent:

Marra, Wenz, Johnson & Hopkins; David A. Hopkins,
Great Falls, Montana

Submitted on Briefs: Jan. 13, 1987

Decided: January 15, 1988

Filed: JAN 1 5 1988

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal by the claimant, Richard Linton, and the State Compensation Insurance Fund from the judgment of the Workers' Compensation Court awarding Linton permanent partial disability payments retroactive to October 19, 1984, and ordering the State Fund to pay rehabilitation in the form of a pain clinic. Both Linton and the State Fund appeal.

We affirm in part, reverse in part and remand with instructions.

Each party raises three issues on appeal. Linton's are:

1. Whether the Workers' Compensation Court erroneously excluded health insurance, retirement contributions and vacation time which were earned pursuant to union contract from the claimant's compensation rate. We hold that it did not err and affirm on this issue.

2. Whether the Workers' Compensation Court erroneously required the claimant to show a total loss of earning capacity, as opposed to loss of wages, in order to receive temporary total benefits. We hold that the court erred and reverse on this issue.

3. Whether the Workers' Compensation Order permitting the defendants to have private interviews and correspondence with the claimant's physicians was erroneous. We hold that the court erred and reverse on this issue.

The State Fund cross-appeals. Its three issues are:

1. Whether the Workers' Compensation Court improperly awarded the claimant retroactive disability benefits despite the testimony of two neurologists, two orthopedic surgeons and the treating chiropractor that the claimant was able to

continue working as a water meter reader for the City of Great Falls. We hold that the court did not err in awarding benefits and affirm this issue.

2. Whether the Workers' Compensation Court improperly ordered the State Compensation Insurance Fund to pay for the expenses of a "pain clinic" at the cost of $4,000 to $4,500 when the treatment was not authorized by the defendant and no physician had referred the claimant to the "pain clinic." We hold that the court did not err and affirm on this issue.

3. Whether the Workers' Compensation Court improperly ordered the State Compensation Insurance Fund to pay the claimant's attorneys fees. We hold that there is substantial evidence in the record for the court to award attorneys fees and remand for a determination of attorneys fees by the court.

At the time this appeal was filed, Richard Linton was a 36-year-old divorced father of two who worked as a meter reader for the City of Great Falls. His job entailed driving a truck to various neighborhoods where he would walk around and read the meters with a TTR gun and record the results. The TTR gun weighs approximtely 10 pounds. The job required walking approximately six miles a day.

On December 13, 1983, Linton slipped and fell on the ice injuring his right knee, neck, back and shoulder. The day after the accident he went to the emergency room at Columbus Hospital and had x-rays taken. He took three days off work after the accident, then returned to work until March 15, 1984, when he went to see Dr. Trosper, a chiropractor. The injuries to his knee and lower back had cleared, but because his shoulder and neck were painful Dr. Trosper felt it advisable to remove Linton from work. Claimant applied for and was accepted for Workers' Compensation. Dr. Trosper treated Linton until July 2, 1984, when the doctor released

- 3 -

him to return to work on a limited basis. Linton asked the State Fund to change doctors. State Fund referred him to Dr. Forbeck, a neurologist. Dr. Forbeck found no neurological abnormalities, but recommended an orthopedic examination. Linton was then examined by Dr. Jacobson, an orthopedic surgeon, in September, 1984. Dr. Jacobson found that the symptoms suggested muscle-ligament discomfort but his examination was entirely normal. He found nothing that would prevent Linton from returning to work, except the subjective complaint of pain.

Because Linton did not return to work following Dr. Jacobson's examination, on October 5, 1984, the State Fund advised him that his benefits would be discontinued as of October 19, 1984. Linton returned to work on October 15 and 16. He testified that he got stiff from working and after two days he could not even turn his head. He took sick leave for the next four days.

On October 18, 1984, the City of Great Falls wrote Linton and asked him to provide them with medical verification by October 23, 1984, of his inability to work. When Linton did not produce the verification within the time period specified, he was terminated by the City for abuse of sick leave.

Linton made an appointment to see Dr. Power, an orthopedic surgeon. Dr. Power found that the original injury could have torn some ligaments that healed with a scar. He suggested heat and exercises and felt the pain should disappear with time. Linton also saw Edward Shubat, a clinical psychologist in January, 1985. Dr. Shubat gave Linton a psychological evaluation in order to determine if he was a good candidate for a chronic pain management program. Dr. Shubat determined that Linton was an excellent candidate for such treatment, which includes biofeedback training,

formal relaxation training, and stretching mobility exercises.

Linton was also examined by Dr. Nelson, a neurologist, who gave Linton a thermogram. The thermogram showed trigger points in the claiment's shoulder girdle. The trigger points are damaged muscles and fibrous tissue that show up on thermograms as hot spots. Dr. Nelson recommended an exercise and therapy program and vocational rehabilitation.

Linton also saw Dr. Tacke who specializes in rehabilitation. He stated Linton would be a good candidate for a chronic pain management program.

The Workers' Compensation Court found that Linton was a credible witness, and that he should be reinstated with permanent partial disability payments retroactive to the date his benefits were terminated. It also ordered the State Fund to pay for rehabilitation services in the form of a pain clinic and awarded Linton his attorney fees.

The first issue raised on appeal by Linton is whether the Workers' Compensation Court erred in excluding health insurance, retirement contributions, and vacation time from the calculation of Linton's wages. The Workers' Compensation Court calculated Linton's wages based on § 39-71-116(20), MCA, (1983). That statute defines wages as:

> . . . the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered. Sick leave benefits accrued by employees of public corporations, as defined by subsection (16) of this section, are considered wages.

Because the definition of public corporations in § 39-71-116(16) includes cities, the Workers' Compensation Court calculated wages by adding Linton's gross weekly earnings to his weekly sick leave benefits and excluded all

other benefits. Linton contends the term "average gross earnings" should be construed broadly to include health insurance, retirement fund contributions and vacation time accrued. Linton argues that these benefits are all items that were negotiated as part of a union contract and earned in exchange for his labor.

It is our intention to examine federal cases to assist us, but consistent with our often stated position, we will initially examine adequate and independent state grounds to resolve issues and cite federal cases for their analytical persuasiveness and not to mandate our decision. We proceed here on that basis.

Benefits to employees increasingly serve as a substitute for wage demand in collective bargaining agreements. West Winds, Inc. v. M.V. Resolute (9th Cir. 1983), 720 F.2d 1097, 1102, cert. den. (1984), 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822. Fringe benefits offer to the employee tax-free benefits that he would otherwise have to buy with after-tax dollars, and often at a substantially higher cost. Morrison-Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs (1983), 461 U.S 624, 103 S.Ct. 2045, 76 L.Ed.2d 194. While we may agree with the theory presented by the claimant that the wording of our statute indicates the legislature intended calculations for Workers' Compensation benefits to be based on wages plus the fringe benefit of sick leave and not other benefits, the legislature did not mention other benefits that it might have included. The general rule is that if a statute lists specific exceptions to the general rule, then other exceptions are excluded. Stephens v. City of Great Falls (1946), 119 Mont. 368, 381, 175 P.2d 408, 415. The United States Supreme Court was faced with the same question of whether wages as defined in the Longshoremen's and Harbor Workers' Compensation Act includes a contribution

made by the employer to union trust funds under the terms of a collective bargaining agreement. Morrison-Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs, supra. The trust funds were used for health and life insurance, unemployment benefits, disability payments, and pensions for the members. The statute in question, 33 U.S.C. § 902(13), stated:

> "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer.

The United States Supreme Court held that while board, rent, housing, or lodging are benefits with a present value that can be readily converted into a cash equivalent on the basis of their market values, the trust funds could not. The Court stated the employer's cost is irrelevant because it does not measure the employee's benefit nor his compensation. The employer's cost does not measure the benefit to the employee because it would cost the employee substantially more to purchase those policies on the open market. The employer's cost also does not measure compensation because it does not tie costs to the employee's labor. The Court refused to value the funds by the employee's expectation in them because the employee's interest is speculative at best.

The Court also stated that while fringe benefits were virtually unknown when the Compensation Act was passed, they have since become quite common. Although the Act has been amended several times, the Court found no indication that Congress intended to expand the definition of wages to include fringe benefits. The Court also refused to expand the definition of wages because it would alter the balance

between the employers and the employees and dramatically alter the cost factor on which employers have ordered their affairs.

The Ninth Circuit recently adopted the rationale of Morrison-Knudsen in West Winds. In that case, the Ninth Circuit, held the phrase "wages of the crew" under the Ship Mortgage Act of 1920, § 30(M), 46 U.S.C. § 953 (1976) did not include contributions to a trust fund to provide health, retirement, pension, training, vacation and similar benefits to the seamen. The Court noted the anomaly that money given to an employee which is spent on benefits is treated as "wages" while money given to a fund that bestows identical benefits upon the employee are not.

In this case the definition of "wages" in § 39-71-116(20), MCA, is even more narrow than the definition in Morrison-Knudson. We specifically adopt the rationale of Morrison-Knudson and West Winds and hold the term "wages" under the Workers' Compensation Act does not include employer contributions to funds that provide health or life insurance, retirement, training, vacation, pension or disability payments. We affirm the Workers' Compensation Court on its finding that health insurance, retirement contributions and vacation time, which were earned pursuant to union contract, are excluded from the claimant's compensation rate.

The second issue raised by Linton on appeal is whether the Workers' Compensation Court erred in denying him temporary total benefits instead of awarding him permanent partial disability. Temporary total disability is defined in § 39-71-116(19), MCA, (1983) as:

> . . . a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the

- 8 -

injuries will permit. Disability shall be supported by a preponderance of medical evidence.

The Workers' Compensation Court held that two conditions must be satisfied in order to award temporary total benefits. First, a total loss of wages, and second, the claimant not be restored as far as the permanent character of his injuries permit. The Workers' Compensation Court held:

Claimant has satisfied the second condition by demonstrating by a preponderance of the medical evidence that there is room for improvement in his physical condition as far as tolerance for pain is concerned. However, he did not demonstrate a total loss of wages. There was no evidence presented to demonstrate that claimant had looked for other employment or that claimant was unable to perform other jobs.

However, the Workers' Compensation Court determined that Linton was entitled to permanent partial disability as defined in § 39-71-116(12), MCA, (1983), as:

. . . a condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capacity less than total that exists after the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.

The Workers' Compensation Court held:

Claimant is medically as far restored as his injury will permit. His ongoing problem is an inability to tolerate the pain that accompanies use of his injured shoulder. For this reason, claimant should be referred to a pain clinic. Referral to a pain clinic is not inconsistent with an award of permanent partial disability benefits.

Linton contends the lower court erred in requiring him to show a loss of earning capacity in order to get temporary total benefits, and that all that § 39-71-116(19), MCA, requires for an award of temporary total disability is an

- 9 -

injury that results in total loss of wages and exists until the injured worker is as far restored as the permenant character of his injuries will permit. He also argues that he is not restored as far as the permanent character of his injuries will permit. The State Fund contends the Workers' Compensation Court erred in awarding retroactive permanent partial benefits because he was not entitled to further benefits. The State Fund advances two arguments. First, the evidence showed the wage loss was not due to the injury but was caused by Linton's misconduct which led to his being fired from his job. The Workers' Compensation Court found Linton to be a credible witness. No findings or conclusions were made relevant to misconduct as the reason for Linton's wage loss. Our decision in this case does not require a further discussion of this contention.

Second, the State Fund argues that the statutes required a showing by a preponderance of the evidence that the injury caused the wage loss and that Linton has failed to show there was any impairment that prevented his return to work.

We begin with whether Linton was entitled to benefits at all. The State Fund contends that Linton should not have been awarded retroactive benefits because he was fired due to misconduct. The State Fund relies on 2 Larson, Workmen's Compensation Law, § 57.64(a), (1985), which states:

> If the record shows no more than that the employee, having resumed regular employment after his injury, was fired for misconduct, with the impairment playing no part in the discharge, it will not support a finding of compensable disability.

Linton resumed regular employment after the injury and worked two days then stopped because of pain. We affirm the court's award of retroactive benefits.

Next the State Fund contends Linton did not show by a preponderance of the evidence an impairment that prevented

his return to work. In reviewing workers' compensation cases, the standard for factual findings is whether there is substantial evidence to support the court's findings. Flansburg v. Pack River Co. (1977), 172 Mont. 163, 561 P.2d 1329. This is especially true in issues of credibility where the lower court has had the opportunity to observe the witnesses. Lamb v. Missoula Imports, Inc. (Mont. 1984), 684 P.2d 498, 41 St.Rep. 1414. However, in reviewing deposition testimony we may examine the findings more closely because we are in as good a position to assess the evidence as is the lower court. Jones v. St. Regis Paper Co. (1981), 196 Mont. 138, 639 P.2d 1140. There is substantial evidence in the record to show that Linton was unable to return to work.

In reviewing the record on appeal, we have found evidence, including medical evidence, that at the time this claim was filed Linton was still experiencing pain due to his injuries and has been unable to return to work. We hold that Linton is entitled to benefits. We therefore turn to the issue of the disability payments which he should receive.

The trial court concluded that the claimant must demonstrate an inability to "perform other jobs" before being entitled to temporary total benefits and awarded claimant permanent partial disability benefits under § 39-71-116(12), MCA, (1983). (Cited previously.)

We cannot agree. The applicable statute is § 39-71-116(19), MCA, (1983), (cited previously), which defines temporary total disability.

Claimant is suffering from a condition resulting from an injury that has resulted in the total loss of his wages and, as the evidence shows, he is not yet as far restored as the permanent character of the injuries will permit. Linton cannot work because of the inability to tolerate the pain that accompanies the use of his injured shoulder. The

Workers' Compensation Court recognized that fact when it ordered the defendant to provide treatment by the pain clinic. After treatment and evaluation another determination can be then be made as to whether claimant is eligible for permanent partial disability benefits under § 39-71-116(12), MCA, or will continue to receive temporary total disability benefits under the provisions of § 39-71-116(19), MCA.

As the facts are before this Court, the award of permanent partial benefits to claimant is in error as a matter of law. Temporary total benefits should be reinstated as of the date of Linton's termination from work. Because of a significant time lapse between that date and this decision, we remand to the Workers' Compensation Court to determine Linton's present level of pain and ability to work.

The State Fund contends the Workers' Compensation Court erred in awarding Linton the cost of a pain clinic because Linton had been referred to Dr. Tacke and the pain clinic by Linton's lawyer and he had not sought the prior approval of the State Fund. Section 24.29.1403, A.R.M. states:

> The injured worker may select the physician to provide initial treatment. Authorization is required to change treating physicians.. . .

In Garland v. Anaconda Co. (1978), 177 Mont. 240, 244, 581 P.2d 431, 433, this Court stated "[t]he proper result of the claimant failing to comply with this rule is that the employer cannot be charged for the services of the unauthorized second doctor, however the Workers' Compensation Court must consider the medical reports and diagnosis of the second doctor." In this case the Workers' Compensation Court obviously did consider the medical reports and diagnosis of the other doctors, and found Linton should be referred to a pain clinic. The court did not err in concluding that Linton should be referred to a pain clinic.

- 12 -

The final issue raised by Linton is whether the Workers' Compensation Court erred in allowing State Fund to have private interviews and correspondence with Linton's physicians. Linton contends that § 26-1-805, MCA, which creates the doctor-patient privilege, and Japp v. District Court (Mont. 1981), 623 P.2d 1389, 38 St.Rep. 280, prevent the State Fund from having private interviews with the claimant's physician. (Emphasis added.) We agree with the claimant.

The doctor-patient privilege is set forth in § 26-1-805, MCA, (1983):

> Except as provided in Rule 35, Montana Rules of Civil Procedure, a licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

Rule 35(b)(2), M.R.Civ.P. states, among other things, that the privilege is waived by commencing an action or asserting a defense which places in issue the mental or physical condition of a party to the action. The waiver does not apply to any treatment or condition not related to the action. In Japp, we ruled that the District Court did not have the power under the Rules of Civil Procedure to order private interviews between counsel for one party and a possible adverse witness in a contested case. The issue here is whether an employer or insurer can communicate with physicians in order to determine the nature and extent of a workers' injury for purposes of compensating him for that injury. The Workers' Compensation Act is withdrawn from private controversies because of the unique status of the Act as a humanitarian, quasi-judicial legislative creation of several special provisions applicable only to injured workers

covered by the law. Section 50-16-311(2)(e), MCA, (1983), provides:

> (2) Consent is not required for release or transfer of confidential health care information:
>
> (e) to an employer as may be reasonably necessary in the administration of a group insurance plan or to a workers' compensation insurer, the division of workers' compensation, or the workers' compensation judge, as is necessary in the administration of Title 39, chapters 71 and 72;

This lanuage is restated in § 39-71-604(1), MCA, (1983), which provides in part:

> Where a worker is entitled to benefits under this chapter, the worker shall file with the insurer or the division all reasonable information needed by the insurer to determine compensability. It is the duty of the workers' attending physician to lend all necessary assistance in making application for compensation and such proof of other matters as may be required by the rules of the division without charge to the worker. The filing of forms or other documentation by the attending physician does not constitute a claim for compensation.

and § 24.29.1404(3), A.R.M. which states:

> The rule of privileged communication is waived by the injured worker seeking benefits under the workers' compensation or occupational disease acts.

Workers' Compensation Court rules provide for an exchange of all medical records prior to trial § 2.52.317, A.R.M. Depositions, interrogatories and motions to produce are available. Sections 2.52.322 to -324, A.R.M. Further, the insurer may have the claimant examined by a physician of his choice. Section 39-71-605, MCA, (1983). What the Act does not contemplate are private interviews between the employer or insurer without the knowledge or opportunity of the claimant to be present. Claimant does not argue, and cannot argue, for a physician-patient privilege. Clearly,

the insurer or employer is entitled to all medical information pertaining to claimant's claim through the usual methods of discovery as well as exchanges between the parties and personal interviews with those who have treated the claimant.

A claimant waives any privilege of confidentiality and health care information which is relevant to the subject matter involved in his claim. See Bowen v. Super Valu Stores, Inc. (Mont. 1987), 745 P.2d 330, 44 St.Rep. 1799.

However, a personal interview between defendant insurance company and claimant's treating physician must be done openly to allay any suspicion that there is something available to one party and not to the other.

For the reasons stated we reverse the Workers' Compensation Court on the issue of private interviews.

Respondent cross-appeals and raises three issues. First, whether the Workers' Compensation Court improperly awarded the claimant retroactive permanent partial disability benefits despite the testimony of two neurologists, two orthopedic surgeons and the treating chiropractor that the claimant was able to continue working as a water meter reader for the City of Great Falls. Dr. Tacke, a rehabilitation specialist, examined Linton after he attempted to return to work. Dr. Tacke recommended that Linton receive additional treatment at the pain clinic. Again, we conclude that there was substantial credible evidence for the Workers' Compensation Court's award of disability benefits.

Next, respondent contends the court improperly ordered the State Fund to pay expenses for a pain clinic which was not authorized by the respondent. We have already ruled on this issue.

Finally, respondent argues the Workers' Compensation Court erred in awarding claimant his attorneys fees. The

court found that the claimant was entitled to attorneys fees in the successful pursuit of this matter. There is substantial evidence in the record to support this finding and we will not disturb it on appeal. We remand the case to the Workers' Compensation Court for determination of the amount of attorneys fees due.

Affirmed in part, reversed in part and remanded with instructions.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 16 -