No. 92-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PERRY HOFFERBER,

Claimant and Appellant,

-vs-

PLAGO MINING, INC.,

Employer,

and

INDUSTRIAL INDEMNITY COMPANY,

Defendant and Respondent.

FILED

FEB 25 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Andrew J. Utick, Utick & Grosfield, Helena, Montana

For Respondent:

Thomas A. Marra, Marra, Wenz, Johnson & Hopkins,
P.C., Great Falls, Montana

Submitted on Briefs:   August 6, 1992

Decided:   February 25, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Claimant, Perry Hofferber, appeals from a judgment in the Workers' Compensation Court, State of Montana, Helena, Montana denying him temporary total disability benefits.

The sole issue for our review is whether the Workers' Compensation Court erred in refusing to grant Hofferber temporary total disability benefits for the period between February 14, 1991, when his doctor advised him that his knee required further surgery, and January 14, 1992, the date of his most recent knee surgery.

On October 13, 1980, Perry Hofferber (Hofferber) suffered an industrial injury to his right knee arising out of and in the course of his employment with Plago Mining, Inc., in Lewis and Clark County, Montana. Plago Mining, Inc. was insured by Industrial Indemnity Company (Industrial), the defendant in this case.

Industrial accepted liability for Hofferber's initial injury and paid benefits from the time of the injury through April 8, 1981. Dr. Carpenter, a Helena orthopedic surgeon, performed surgery on January 7, 1981, to remove a popliteal cyst from Hofferber's right knee. On April 8, 1981, Dr. Carpenter released Hofferber to return to work, as he felt Hofferber had reached a medically stable condition and had attained maximum healing at that time.

From April 1981 to July 1985, Hofferber worked as a self-employed carpenter. Although he had continued to have problems with his knee, as a self-employed carpenter, he could take breaks

2

and days off if necessary because of the pain. On July 24, 1985, Hofferber began seeing Dr. Humberger in Bozeman. Dr. Humberger performed arthroscopic surgery on the right knee on September 12, 1985. Dr. Humberger's opinion was that the problems Hofferber experienced which resulted in the second surgery in 1985 were a direct result of the original 1980 injury.

Hofferber began attending Montana State University in Bozeman in the fall of 1985 and continued to do so through the time of the trial. In the fall of 1990, he again began to experience problems with his right knee. Because Dr. Humberger was then out of the country, his office referred Hofferber to Dr. Lowell Anderson, who examined him in February of 1991. After performing some diagnostic tests, Dr. Anderson recommended further arthroscopic surgery. Hofferber did not have surgery at that time. He continued to attend MSU. Dr. Anderson testified that the surgery would have kept Hofferber from attending school for only one or two days. Hofferber finally had the knee surgery performed in January 1992, after the Workers' Compensation Court's December 6, 1991 decision entitling Hofferber to medical benefits based on the original 1980 injury.

Hofferber received temporary total disability benefits from the date of his injury in October 1980 until he reached maximum healing in April 1981. An April 1, 1991 decision of the Workers' Compensation Court awarded him temporary total disability benefits for the period of time between September 12, 1985 and May 12, 1986, the period of recovery from the second surgery. The Workers'

Compensation Court's December 6, 1991 judgment entitles Hofferber to receive temporary total disability benefits for the period of time from the date of the January 1992 surgery until the date of maximum healing following that surgery.

I.

Did the Workers' Compensation Court err in refusing to grant Hofferber temporary total disability benefits retroactively from the date he was advised to have a third surgery to the actual date of the surgery?

Hofferber contends that he should receive temporary total disability benefits not only for the time from the third surgery to maximum healing, but also retroactively from the date of that surgery, January 14, 1992, back to February 14, 1991, the date Dr. Anderson first recommended the surgery. He contends that he meets the definition of temporary total disability as of February 14, 1991 until he reaches the end of his healing period following surgery. The applicable statute in effect at the time of Hofferber's injury reads as follows:

> "Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.

Section 39-71-116(19), MCA (1983).

This statute requires two things: (1) that the injury result in total wage loss, and (2) that the injured worker is not as far restored as the permanent character of his injuries permits. Clearly, as the Workers' Compensation Court found, Hofferber's

4

condition was not "as far restored as the permanent character of the injuries" would permit at the time he sought medical treatment in February of 1991. This second factor is not relevant to our discussion here.

Hofferber contends that he meets the first prong of the statutory definition merely by earning no wages from February 14, 1991 to the time of trial before the Workers' Compensation Court. Industrial contends that Hofferber, not the insurer, must prove that he suffered a total loss of wages and that he was unable to work. Hofferber, on the other hand, argues that the surgery had to be postponed until after the trial because the insurer refused to pay medical expenses and, therefore, that he had to wait until the Workers' Compensation Court ruled on the issue. He claims that the doctors refused to treat him without cash payment in advance and that he could not afford to pay for the surgical procedures in advance.

Hofferber cites Linton v. City of Great Falls (1988), 230 Mont. 122, 749 P.2d 55, to support his argument that he need not show a loss of earning capacity, as opposed to loss of wages, in order to receive temporary total disability benefits based on § 39-71-116(19), MCA. In Linton, we held that a claimant whose injury caused him to actually lose wages because of his inability to return to work could receive such benefits. Linton, 749 P.2d at 61. Such is not the case here. Despite Hofferber's argument that he was not working in February 1991, he presented insufficient medical or other evidence to establish that he was unable to work.

5

His choice not to work was purely voluntary because he decided instead to continue his college education. Under these circumstances, § 39-71-116(19), MCA, requires the claimant to prove by a preponderance of the evidence that he is unable to work.

When a claimant is voluntarily out of the job market attending college, it is not sufficient to show that he earned no wages. Thus, the Workers' Compensation Court's denial of temporary total disability benefits based upon Homme v. Rauenhorst Corp. (1987), 227 Mont. 495, 740 P.2d 1110, is not error. The claimant in Homme sought temporary total disability benefits following his healing period and restoration to a condition "as far as the permanent character of his injury" would permit. Throughout the applicable time period, he attended college. We concluded that he could not receive benefits while he was in college being retrained because he "had a normal labor market" in which to search for a job, even though he could not work at the same job that he had prior to his injury. Homme, 740 P.2d at 1114. In this case, Hofferber did not meet the statutory requirements because he attended college and failed to prove that he was unable to work or that his training was part of a rehabilitation program.

We conclude that the Workers' Compensation Court did not err when it refused to allow retroactive temporary total disability benefits from February 14, 1991 to January 14, 1992.

We affirm.

Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

When Perry Hofferber could no longer tolerate the pain and impairment in his knee, he saw Dr. Lowell M. Anderson on February 14, 1991. Dr. Anderson observed significant discomfort and swelling, limited range of motion, pain with movement to the knee, and a recent increase in claimant's symptoms. He formed the opinion that a large popliteal cyst had formed on the posterior side of claimant's knee and that the cyst had resulted from internal irregularity in the knee joint.

Doctor Anderson recommended that claimant undergo arthroscopic surgery to treat the problems he had diagnosed and suggested that he return to Dr. Frank Humberger who had previously performed arthroscopic surgery on the claimant in 1985. Everyone agrees that at that point claimant's healing period had not ended.

The problem for claimant was that defendant still had not paid for the 1985 surgery (even though it was subsequently ordered to do so by the Workers' Compensation Court); claimant had been put on a pay-as-you-go basis by Dr. Humberger's office manager; and claimant was unable to afford the surgery.

In fact, claimant's outstanding bill for Humberger's services in relation to the 1985 surgery had been turned over to a collection agency and was not paid by defendant until the Workers' Compensation Court entered judgment in April 1991 requiring defendant to pay that bill.

8

Claimant had to file another petition in the Workers' Compensation Court to compel defendant to accept responsibility for this surgical procedure.

It was the decision of the Workers' Compensation Court in this case that claimant would be entitled to temporary total disability benefits following surgery until he reached the end of his healing period, but not before surgery, even though surgery was delayed due solely to the conduct of defendant. This Court has affirmed that judgment. However, the arbitrary point selected for the beginning of temporary total disability status makes no sense.

The testimony in this case was that claimant would be unable to attend classes for at least two days following the arthroscopic surgery. However, the testimony from claimant's previous trial, which was made part of the record in this case, was that his healing period would last for six months to a year from the date of this kind of surgery. Certainly, neither the trial court nor the majority contend that during that entire six to twelve months claimant would be less able to work than he was in February 1991 when his need for surgery was determined.

I also disagree that the medical evidence was insufficient to establish that claimant was unable to return to his former occupation as a carpenter. And according to this Court's previous decision in *Linton v. City of Great Falls* (1988), 230 Mont. 122, 749 P.2d 55, it was not necessary for claimant to establish that he had no earning capacity in order to qualify for temporary total disability benefits.

9

In *Linton*, the claimant also failed to demonstrate a total loss of wages and presented no evidence to demonstrate that he was completely unable to perform any kind of gainful employment. In fact, the undisputed evidence was that there were jobs he could perform, even though his healing period had not ended. On appeal, that claimant contended that the trial court had erred by requiring him to show a total loss of earning capacity in order to qualify for temporary total disability benefits under § 39-73-116(19), MCA. We agreed and reversed the trial court's judgment for the reason that there was substantial evidence to show that claimant could not return to his former occupation. We held that:

> The trial court concluded that the claimant must demonstrate an inability to "perform other jobs" before being entitled to temporary total benefits and awarded claimant permanent partial disability benefits under § 39-71-116(12), MCA (1983).
>
> We cannot agree. The applicable statute is § 39-71-116(19), MCA (1983), which defines temporary total disability.
>
> Claimant is suffering from a condition resulting from an injury that has resulted in the total loss of his wages and, as the evidence shows, he is not yet as far restored as the permanent character of the injuries will permit. Linton cannot work because of the inability to tolerate the pain that accompanies the use of his injured shoulder. . . .
>
> As the facts are before this Court, the award of permanent partial benefits to claimant is in error as a matter of law. Temporary total benefits should be reinstated as of the date of Linton's termination from work.

*Linton*, 749 P.2d at 61.

10

The only requirements established in *Linton* to qualify for temporary total disability benefits are that the worker was unable to return to his former occupation and that his healing period had not ended. With this decision, we now add an additional element so that the emphasis in determination of temporary total disability is no longer the claimant's physical condition or health, but rather what he is capable of earning. This decision will force injured workers to obtain employment before they are physically ready to do so, in many cases aggravating their condition and creating more significant long-term consequences than would be necessary if they were allowed to heal adequately before returning to the work force.

The majority affirmed the Workers' Compensation Court's denial of temporary total benefits based upon our decision in *Homme v. Rauenhorst Corporation* (1987), 227 Mont. 495, 740 P.2d 1110. However, there is nothing about *Homme* which is similar to the facts in this case. Unlike the claimant in this case, Homme had reached maximum healing. He did qualify for retraining at the expense of the Department of Social and Rehabilitation Services. However, the counselor from that agency testified that even without retraining he would qualify for some forms of employment. There was undisputed testimony that his healing period had ended, and that he had a normal labor market. In this case, the undisputed testimony is just the opposite. It is conceded that by February 14, 1991, it had been medically established that this claimant's healing period had not ended. It can be logically deduced from the examining

11

physician's description of his physical condition that he could not perform the types of physical labor he had performed in the past without further aggravating his condition and there was no evidence offered by defendant to establish that claimant had any residual or normal labor market other than the occupations he had previously performed.

There are sound reasons for placing greater emphasis on a worker's physical condition than his earning capacity when analyzing temporary total disability, as opposed to permanent total disability. While it may be true that after the healing period has ended it is important for workers to test their capacity and endurance and perform to the greatest extent possible, just the opposite is true during a worker's healing period.

It is important that employees who have been injured and whose healing period has not ended be allowed to fully recover from their injury before pursuing employment, regardless of whether they are technically capable of performing some limited activities which could constitute gainful employment.

The historical purpose of treating temporary total disability benefits differently from permanent disability benefits, has been that workers should be given every opportunity to obtain adequate treatment and heal to the fullest extent without competition from economic pressures. With the increased emphasis that this opinion places on earning capacity, rather than the degree to which a worker has physically healed, that worthy purpose has been jeopardized.

12

Had the claimant gone from the doctor's office on February 14 to the surgical suite on February 15, 1991, neither the trial court nor the majority would have any difficulty concluding that he was temporarily totally disabled from that point in time, with or without evidence of his job market. Neither would the majority have any difficulty concluding that claimant's disability status should continue for the six to twelve months of healing following that surgical procedure. However, the reality of the situation is that within two days of that surgical procedure, his physical condition would, in all probability, have been better than the physical condition in which he found himself from February 14, 1991, to January 14, 1992, when he was finally financially able to have the surgery performed. The only reason that the surgery was postponed was because he was financially unable to pay for it. The only reason he was unable to pay for it was because of the insurer's unwillingness to accept responsibility until it had been ordered to in a second trial court decision over the very same knee injury.

This decision arbitrarily and unreasonably penalizes claimant for defendant's misconduct.

For these reasons, I dissent. I would reverse the judgment of the Workers' Compensation Court and award claimant temporary total disability benefits retroactive to February 14, 1991.

Justice

13

February 25, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Andrew J. Utick
UTICK & GROSFIELD
P.O. Box 512
Helena, MT59624-0512

THOMAS A. MARRA
Attorney at Law
P.O. Box 1525
Great Falls, MT 59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy