JUSTICE TRIEWEILER
dissenting.
I dissent from the opinion of the majority.
When Perry Hofferber could no longer tolerate the pain and impairment in his knee, he saw Dr. Lowell M. Anderson on February 14, 1991. Dr. Anderson observed significant discomfort and swelling, limited range of motion, pain with movement to the knee, and a recent increase in claimant’s symptoms. He formed the opinion that a large popliteal cyst had formed on the posterior side of claimant’s knee and that the cyst had resulted from internal irregularity in the knee joint.
Doctor Anderson recommended that claimant undergo arthroscopic surgery to treat the problems he had diagnosed and suggested that he return to Dr. Frank Humberger who had previously performed arthroscopic surgery on the claimant in 1985. Everyone agrees that at that point claimant’s healing period had not ended.
The problem for claimant was that defendant still had not paid for the 1985 surgery (even though it was subsequently ordered to do so by the Workers’ Compensation Court); claimant had been put on a pay-as-you-go basis by Dr. Humberger’s office manager; and claimant was unable to afford the surgery.
In fact, claimant’s outstanding bill for Humberger’s services in relation to the 1985 surgery had been turned over to a collection agency and was not paid by defendant until the Workers’ Compensation Court entered judgment in April 1991 requiring defendant to pay that bill.
Claimant had to file another petition in the Workers’ Compensation Court to compel defendant to accept responsibility for this surgical procedure.
It was the decision of the Workers’ Compensation Court in this case that claimant would be entitled to temporary total disability benefits following surgery until he reached the end of his healing period, but not before surgery, even though surgery was delayed due solely to the conduct of defendant. This Court has affirmed that judgment. How *96 ever, the arbitrary point selected for the beginning of temporary total disability status makes no sense.
The testimony in this case was that claimant would be unable to attend classes for at least two days following the arthroscopic surgery. However, the testimony from claimant’s previous trial, which was made part of the record in this case, was that his healing period would last for six months to a year from the date of this kind of surgery. Certainly, neither the trial court nor the majority contend that during that entire six to twelve months claimant would be less able to work than he was in February 1991 when his need for surgery was determined.
I also disagree that the medical evidence was insufficient to establish that claimant was unable to return to his former occupation as a carpenter. And according to this Court’s previous decision in Linton v. City of Great Falls (1988), 230 Mont. 122, 749 P.2d 55, it was not necessary for claimant to establish that he had no earning capacity in order to qualify for temporary total disability benefits.
In Linton, the claimant also failed to demonstrate a total loss of wages and presented no evidence to demonstrate that he was completely unable to perform any kind of gainful employment. In fact, the undisputed evidence was that there were jobs he could perform, even though his healing period had not ended. On appeal, that claimant contended that the trial court had erred by requiring him to show a total loss of earning capacity in order to qualify for temporary total disability benefits under Section 39-73-116(19), MCA. We agreed and reversed the trial court’s judgment for the reason that there was substantial evidence to show that claimant could not return to his former occupation. We held that:
The trial court concluded that the claimant must demonstrate an inability to “perform other jobs” before being entitled to temporary total benefits and awarded claimant permanent partial disability benefits under Section 39-71-116(12), MCA (1983).
We cannot agree. The applicable statute is Section 39-71-116(19), MCA (1983), which defines temporary total disability.
Claimant is suffering from a condition resulting from an injury that has resulted in the total loss of his wages and, as the evidence shows, he is not yet as far restored as the permanent character of the injuries will permit. Linton cannot work because of the inability to tolerate the pain that accompanies the use of his injured shoulder....
*97 As the facts are before this Court, the award of permanent partial benefits to claimant is in error as a matter of law. Temporary total benefits should be reinstated as of the date of Linton’s termination from work.
Linton, 749 P.2d at 61.
The only requirements established in Linton to qualify for temporary total disability benefits are that the worker was unable to return to his former occupation and that his healing period had not ended. With this decision, we now add an additional element so that the emphasis in determination of temporary total disability is no longer the claimant’s physical condition or health, but rather what he is capable of earning. This decision will force injured workers to obtain employment before they are physically ready to do so, in many cases aggravating their condition and creating more significant long-term consequences than would be necessary if they were allowed to heal adequately before returning to the work force.
The majority affirmed the Workers’ Compensation Court’s denial of temporary total benefits based upon our decision in Homme v. Rauenhorst Corporation (1987), 227 Mont. 495, 740 P.2d 1110. However, there is nothing about Homme which is similar to the facts in this case. Unlike the claimant in this case, Homme had reached maximum healing. He did qualify for retraining at the expense of the Department of Social and Rehabilitation Services. However, the counselor from that agency testified that even without retraining he would qualify for some forms of employment. There was undisputed testimony that his healing period had ended, and that he had a normal labor market. In this case, the undisputed testimony is just the opposite. It is conceded that by February 14, 1991, it had been medically established that this claimant’s healing period had not ended. It can be logically deduced from the examining physician’s description of his physical condition that he could not perform the types of physical labor he had performed in the past without further aggravating his condition and there was no evidence offered by defendant to establish that claimant had any residual or normal labor market other than the occupations he had previously performed.
There are sound reasons for placing greater emphasis on a worker’s physical condition than his earning capacity when analyzing temporary total disability, as opposed to permanent total disability. While it may be true that after the healing period has ended it is important for workers to test their capacity and endurance and *98 perform to the greatest extent possible, just the opposite is true during a worker’s healing period.
It is important that employees who have been injured and whose healing period has not ended be allowed to fully recover from their injury before pursuing employment, regardless of whether they are technically capable of performing some limited activities which could constitute gainful employment.
The historical purpose of treating temporary total disability benefits differently from permanent disability benefits, has been that workers should be given every opportunity to obtain adequate treatment and heal to the fullest extent without competition from economic pressures. With the increased emphasis that this opinion places on earning capacity, rather than the degree to which a worker has physically healed, that worthy purpose has been jeopardized.
Had the claimant gone from the doctor’s office on February 14 to the surgical suite on February 15, 1991, neither the trial court nor the majority would have any difficulty concluding that he was temporarily totally disabled from that point in time, with or without evidence of his job market. Neither would the majority have any difficulty concluding that claimant’s disability status should continue for the six to twelve months of healing following that surgical procedure. However, the reality of the situation is that within two days of that surgical procedure, his physical condition would, in all probability, have been better than the physical condition in which he found himself from February 14, 1991, to January 14, 1992, when he was finally financially able to have the surgery performed. The only reason that the surgery was postponed was because he was financially unable to pay for it. The only reason he was unable to pay for it was because of the insurer’s unwillingness to accept responsibility until it had been ordered to in a second trial court decision over the very same knee injury.
This decision arbitrarily and unreasonably penalizes claimant for defendant’s misconduct.
For these reasons, I dissent. I would reverse the judgment of the Workers’ Compensation Court and award claimant temporary total disability benefits retroactive to February 14, 1991.