Dan HAMPTON, Individually and as Personal Representative of the Estate of Danelle Hampton, deceased, Plaintiff,

v.

Robert SCHIMPFF, M.D., and Kalispell Regional Hospital, Defendants.

No. CV–98–41–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Sept. 28, 1999.

Douglas A. Buxbaum, Buxbaum & Dix Law Offices, Butte, MT, for plaintiff.

Dana L. Christensen, Christensen, Moore & Cockrell, PC, Kalispell, MT, E. Craig Daue, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for defendant.

MOLLOY, District Judge.

An issue was raised at the Final Pre-trial Conference in this case. Two treating physicians have been designated by defendants as witnesses for the defendants. Additionally, Dr. Schimpff has designated one of the treating doctors as an expert witness on his behalf. Plaintiff's lawyers object to any *ex parte* contact between either defense counsel and any treating doctor in the case. They also argue that Doctor Stanley Barnwell is not a properly designated expert.

I asked for briefs on the issue but I am convinced after reading Montana statutes and case law that the plaintiff is correct. It is impermissible for the defendant's lawyers to have *ex parte* contact with any of the decedent's treating doctors. *Jaap v. District Court of the Eighth Judicial District,* 191 Mont. 319, 623 P.2d 1389, 1392 (1981) (Rules of discovery do not allow private interviews with a party's physicians); See also, *Linton*

*v. City of Great Falls,* 230 Mont. 122, 749 P.2d 55 (1988) overruled on other grounds by *Anderson v. Hammer,* 1991 WL 182110 (Mont. Sep. 16, 1991) (NO. 90–587), rehearing granted, opinion withdrawn (Nov. 22, 1991).

The situation here is complicated because Dr. Schimpff has designated the decedent's Oregon treating physician as a medical liability expert. The designation is inappropriate because making a treating physician a medical malpractice liability expert, without the patient's consent, violates § 26-1-805, MCA, 1997, the pretrial order requiring mutual disclosure of liability experts, and public policy.

### 1. *Jaap and § 26-1-805, MCA, 1997*

The combination of *Jaap v. District Court of the Eighth Judicial District,* 191 Mont. 319, 623 P.2d 1389, 1392 (1981) and § 26-1-805, MCA, 1997 make any *ex parte* contact with any treating doctor impermissible. Rule 501 F.R.Evid. (the privilege of a witness ... shall be determined in accordance with State law.)

The current statute on Doctor-patient privilege states:

"Except as provided in Rule 35, Montana Rules of Civil Procedure, a licensed physician, surgeon, or dentist cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

*Jaap* has not been overruled and is still good law in Montana. Defense lawyers and treating doctors are prohibited from meeting to discuss the plaintiff unless the plaintiff's lawyer is present or unless the plaintiff gives her consent to the *ex parte* meeting. Furthermore, the treating doctor cannot be examined in a civil case "as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." § 26-1-805 MCA, 1997. This rule applies except as interpreted by the *Jaap* court and Rule 35 examinations. See, *Jaap v. District Court of the Eighth Judicial District,* 191 Mont. 319, 623 P.2d 1389, 1391 (1981) (plaintiff waives any physician-patient privilege arising from

an incident by commencing an action and placing her mental or physical condition in controversy).

### 2. *The Mutual Disclosure of Liability Experts*

By virtue of the specific language of the March 1, 1999 amendment to the Preliminary Pre-trial order, liability experts were to be mutually disclosed by May 14, 1999. Both parties disclosed their principal liability experts as required by the order. However, on May 28, 1999 Dr. Barnwell, decedent's Oregon treating physician was deposed. At that examination counsel for Dr. Schimpff apparently elicited favorable opinions for the defense on liability questions including the standard of care. Nonetheless, at the time, Dr. Barnwell had no knowledge of any of the underlying facts or circumstances of the untoward event that is the subject of this lawsuit, except as to his own involvement.

Dr. Barnwell will not be allowed to express opinions about the standard of care issue in this case. His opinions will be limited to his care, treatment and prognosis of the patient at the time she was under his care.

While it is true that defendant Dr. Schimpff made a "supplemental" disclosure on June 16, 1999 by referring to Dr. Barnwell's deposition, this does not comport with the pre-trial order or the requirements of Rule 26(a)(2) either in timeliness, or content. "Supplemental disclosure" is an ongoing obligation of the parties to correct earlier opinions disclosed by an expert. It does not refer to the disclosure of a new expert after the court-ordered deadline for simultaneous disclosure. Moreover, to allow Dr. Barnwell's testimony on the standard of care would allow the defendant an opportunity to address this issue after analyzing plaintiff's expert reports. This is precisely what simultaneous disclosure seeks to avoid.

### 3. *Montana Public Policy*

Interjecting a treating doctor into the middle of a medical malpractice case as a witness for his or her patient's adversary is against Montana's public policy. Implicit in the *Jaap* decision and § 26-1-805, MCA, 1997 is the intent of the Montana Legislature

and the Montana Supreme Court to protect the Doctor-patient privilege. A patient must have confidence that her doctor will not turn on her because of philosophical or political loyalties to the medical profession. The doctor's fiduciary loyalty must be to her patient. It is not, and cannot be to her colleagues. To hold otherwise would place a treating physician, one to whom a patient with difficult complications has been referred, in the untenable position of having to choose between her fiduciary duty to the patient, and her collegial relationship with a referring physician who may have caused or contributed to the harm in question.

Furthermore, Rule 403 F.R.Evid would proscribe the use of such testimony because its probative value is substantially outweighed by the danger of unfair prejudice, by confusion of the issues, and by misleading the jury. If a treating doctor chooses to overlook her fiduciary duty to the patient and to testify on behalf of a colleague, it is unlikely that the patient could overcome the prejudice or the confusion that would be created in the minds of reasonable jurors. A conflict in credibility that goes to the heart of the advocacy system exists if the plaintiff's proof to the jury is from academic "hired gun" experts, while the defendant's proof is from the plaintiff's own treating physician who is engaged in a clinical practice. Consequently, the proof should not be allowed.[1]

 Under Montana law a treating doctor can never act as an expert in opposing her patient's malpractice claim against another doctor, without the patient's consent. This determination does not mean a treating doctor cannot be called as a defense witness. It means that if she is called her testimony is limited to what she did and why she did it: care, treatment and prognosis, not who is at fault or whether the initial treating doctor applied the proper standard of care.

### 4. *Conclusion*

The issue I am confronted with was argued at the Final Pre-trial Conference. During argument counsel for Dr. Schimpff advised that he intended to meet with Dr. Barnwell to discuss his testimony on Thursday of this week. In light of my determination about the applicable law, if I await full briefing, needless expense will be incurred as will a violation of the doctor-patient privilege and § 26–1–805, MCA, 1997.

THEREFORE, IT IS HEREBY ORDERED that a protective order be, and the same hereby is entered prohibiting Dr. Barnwell from having any further *ex parte* contact with lawyers for either defendant, or from contacting or having contact with the insurers or agents of the companies insuring defendants about this case or the decedent.

IT IS FURTHER ORDERED IN LIMINE that Dr. Barnwell not discuss or imply or suggest in his testimony any opinion concerning the standard of care that applies to the facts of this case, either at the request of the plaintiff, or at the request of the defendant.

IT IS FURTHER ORDERED that the briefing schedule ordered at the Final Pre-trial Conference on this issue is VACATED.

The clerk is directed to notify the parties of the entry of this order immediately and by facsimile.

---

1. The same problem does not exist when the doctor testifies on behalf of her patient.