Justice Jim Rice delivered the Opinion of the Court.
*71 ***180 ¶ 1 Plaintiff Janie Robinson (Robinson) appeals from the summary judgment entered by the First Judicial District Court, Lewis and Clark County, in favor of Defendant State Compensation Mutual Insurance Fund (State Fund), on Robinson's claims. We affirm, addressing the following issues:
1. Did the District Court err by denying Robinson's claims that § 39-71-605, MCA, was unconstitutional because it permits workers' compensation insurers to obtain multiple medical examinations of a claimant?
2. Did the District Court err by denying Robinson's constitutional tort claim?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 On July 4, 1996, Robinson suffered a heat stroke-related injury while working on the South Peak Angus Ranch in Judith Basin County, Montana. South Peak was insured for workers' compensation purposes by State Fund, which accepted liability for Robinson's injury and began paying expenses related to her medical care. Six years later, in September 2002, State Fund referred Robinson for an independent medical examination (IME) by Dr. Bach, for the purposes of determining the effectiveness of the treatment Robinson was receiving, assessing whether she suffered from emotional health problems unrelated to her 1996 injury, and identifying any permanent restrictions causally related to that injury. Dr. Bach reported that, in his view, Robinson's "[c]urrent course of treatment is appropriate, reasonable, and medically necessary."
¶ 3 In November 2002, State Fund assigned Robinson's case to Claim ***181 Examiner Bridget Disburg. Robinson was then receiving primary medical care from Dr. Astle and counseling from Dr. Johnson. Upon her review of Robinson's file, Disburg noticed that Robinson was taking two forms of anti-inflammatory medication that seemed inconsistent with her treatment for a heat stroke injury. Additionally, Disburg found no treatment plans from either of Robinson's physicians. In February 2003, Disburg sent a letter to Dr. Astle and Dr. Johnson inquiring about Robinson's treatment plan, citing a Montana Administrative Rule authorizing submission of such plans, and copying Robinson with her correspondence.
¶ 4 Because Robinson had not yet recovered and was still receiving treatment for her 1996 injury, in March 2003 Disburg requested a medical records review of Robinson's case by Dr. Stratford. Robinson was informed by letter of this records review. Dr. Stratford opined that a medical panel evaluation would be the most appropriate way to assess the issues involved with Robinson's care. Disburg contacted Robinson about Dr. Stratford's recommendation for a panel IME, and, according to Disburg's affidavit, Robinson "seemed open to the option." Sam Heigh, Disburg's supervisor, spoke with Robinson over the phone in June 2003, wherein Robinson expressed concern about the second IME, but indicated she was willing to participate. In addition to Dr. Stratford, the panel consisted of a psychiatrist, a neurologist, and a psychologist. The IME was conducted in September 2003.
¶ 5 Dr. Stratford, authoring the panel's report, stated that, while acknowledging Robinson's need for further treatment of her depression, he would not "endorse" the current course of Robinson's treatment, adding "[b]y no means do I mean to denigrate or be *72 critical of the therapy that has occurred because I believe it has been very helpful. However, it does need to be very much more directed toward solutions ...." He concluded with a recommendation to "[c]ontinue to have [Robinson] work with this psychologist as long as it is aimed toward a goal-directed cognitive treatment of depression-perhaps even on a weekly basis up to six months-with some clear indication of value past that point." In December 2003, Disburg forwarded the panel's report to Dr. Astle and renewed her request for submission of a treatment plan.
¶ 6 Robinson suffered an injury to her lower back while working at South Peak Angus Ranch in March of 2004, which was still insured by State Fund at that time. State Fund accepted liability and began paying for medical care associated with this injury as well.
¶ 7 In May 2004, addressing Robinson's ongoing psychiatric care related to the 1996 injury, State Fund requested that Robinson's ***182 psychiatrist, Dr. Engstrom, provide a treatment plan, including "a timetable for the implementation and duration of the treatment." The letter instructed that a narrative report would need to be submitted at the end of the designated treatment period "prior to initiating any additional services," and that "[p]ayment for any future services will be suspended pending receipt of the treatment plan." In August 2004, Robinson's therapist, Dr. Johnson, advised State Fund that Robinson's treatment would continue for a minimum of twelve months or "into the unforeseeable future."
¶ 8 In light of a review of Dr. Johnson's progress notes and Dr. Stratford's recommendations, State Fund, in November 2004, suspended payment for further treatment of Robinson by Dr. Johnson, in favor of and regular visits with Dr. Astle and biofeedback treatment, which State Fund had approved. That decision was reversed one month later and State Fund resumed its payment of Robinson's psychiatric services. Dr. Astle later reported that Robinson had "reached maximum psychological stability, maximum healing or maximum medical healing," effective June 2005. In March 2006, State Fund declared Robinson permanently totally disabled based upon the cumulative effect of her injuries for which State Fund had accepted liability.
¶ 9 Beginning in 2004, Robinson filed successive legal challenges in the Workers' Compensation Court (WCC) to the managed care provisions of the Workers' Compensation Act, and the medical utilization rules governing workers' compensation claims promulgated by the Department of Labor and Industry, as unconstitutional. Ultimately, these actions were dismissed by the WCC, first, on grounds that Robinson lacked standing, because her claims against State Fund did not arise under the challenged provisions. And secondly, that the WCC lacked jurisdiction over some of Robinson's claims because they did not arise in the context of a dispute regarding benefits.
¶ 10 Robinson originally filed this proceeding before the Lewis and Clark County District Court in 2005, ultimately filing her Second Amended Complaint in December 2015. Robinson alleged that State Fund's handling of her workers' compensation claims violated her constitutional rights to privacy, substantive due process, and freedom from unreasonable searches, by reason of obtaining a second IME without showing good cause; that State Fund committed a constitutional tort against her; and that she was entitled to attorneys' fees under the private attorney general doctrine because the government "fail[ed] to properly enforce" significant constitutional protections.
***183 ¶ 11 The parties filed cross motions for summary judgment, and the District Court granted State Fund's motion, while denying Robinson's motion and dismissing her complaint with prejudice. Robinson appeals.
STANDARD OF REVIEW
¶ 12 We review a district court's grant or denial of summary judgment de novo, applying the same criteria used by the district court under M. R. Civ. P. 56. Pilgeram v. Greenpoint Mortg. Funding, Inc. , 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. "Summary judgment is appropriate only when there is no genuine issue of material *73 fact, and the moving party is entitled to judgment as a matter of law." Town & Country Foods, Inc. v. City of Bozeman , 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283.
¶ 13 Our review of constitutional questions is plenary. Williams v. Bd. of County Comm'rs , 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88. "Legislative enactments are presumed to be constitutional, and the party challenging the provision has the burden of proving beyond a reasonable doubt that it is unconstitutional." Williams , ¶ 23. "If there is any doubt as to constitutionality, the resolution must be made in favor of the statute." Walters v. Flathead Concrete Prods ., 2011 MT 45, ¶ 32, 359 Mont. 346, 249 P.3d 913. A statute's constitutionality is a question of law, which we review for correctness. Walters , ¶ 9.
DISCUSSION
¶ 14 1. Did the District Court err by denying Robinson's claims that § 39-71-605, MCA, was unconstitutional because it permits workers' compensation insurers to obtain multiple medical examinations of a claimant?
¶ 15 Broadly stated, the issue raised here is whether § 39-71-605, MCA, violates the Montana Constitution. Robinson argues the provision permits State Fund to act in contravention to the rights of privacy, substantive due process, and against unreasonable searches embodied in Article II, Sections 3, 10, and 17 of the Montana Constitution.
¶ 16 Section 39-71-605(1), MCA, provides, in pertinent part:
(a) Whenever in case of injury the right to compensation under this chapter would exist in favor of any employee, the employee shall, upon the written request of the insurer, submit from time to time to examination by a physician, psychologist, or panel that must be provided and paid for by the insurer and shall likewise submit to examination from time to time by any physician, psychologist, or panel selected by the department or as ordered by ***184 the workers' compensation judge.
(b) The request or order for an examination must fix a time and place for the examination, with regard for the employee's convenience, physical condition, and ability to attend at the time and place that is as close to the employee's residence as is practical. An examination that is conducted by a physician, psychologist, or panel licensed in another state is not precluded under this section. The employee is entitled to have a physician present at any examination. If the employee, after written request, fails or refuses to submit to the examination or in any way obstructs the examination, the employee's right to compensation must be suspended and is subject to the provisions of 39-71-607. Any physician, psychologist, or panel employed by the insurer or the department who makes or is present at any examination may be required to testify as to the results of the examination.
¶ 17 Robinson's constitutional claims are premised upon State Fund obtaining a second medical evaluation, thus implicating the portion of § 39-71-605(1), MCA, requiring a claimant who is receiving workers' compensation to, "upon the written request of the insurer, submit from time to time to examination by a physician, psychologist, or panel." Section 39-71-605(1)(a), MCA. Robinson argues, "[t]he Court should hold that § 605 is facially invalid. The doctor shopping, which it promotes, violates constitutional guarantees."[1]
*74 a. Right to Privacy
¶ 18 In a facial argument, Robinson contends that by allowing insurers "to compel attendance at serial IMEs, with no showing of good cause," the statute "unduly abridg[es] privacy rights" of all workers'
***185 compensation claimants, in violation of the Montana Constitution. As applied to her, Robinson contends that the second IME obtained by State Fund in her case, as authorized under § 39-71-605(1), MCA, violated her fundamental right to privacy by failing to establish good cause for the panel evaluation.
¶ 19 Article II, Section 10 of the Montana Constitution provides: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." This Court has long recognized that "the privacy interests concerning a person's medical information implicate Article II, Section 10, of the Montana Constitution." Malcomson v. Liberty Northwest , 2014 MT 242, ¶ 23, 376 Mont. 306, 339 P.3d 1235 (citing State v. Nelson , 283 Mont. 231, 241-42, 941 P.2d 441, 447-48 (1997) ). Robinson argues strict scrutiny review is applicable here because the challenged statute implicates the fundamental right of privacy. Consistent therewith, State Fund responds by arguing that § 39-71-605(1), MCA, is justified by a compelling state interest and is narrowly tailored to effectuate that interest, thus satisfying strict scrutiny review. As we explained in Malcomson , "legislation that infringes the right of privacy must be reviewed under a strict scrutiny analysis. The subject statute must be justified by a compelling state interest and be narrowly tailored to effectuate that purpose." Malcomson , ¶ 24.
¶ 20 In Malcomson , we addressed a related statute, § 39-71-604, MCA, which permitted a workers' compensation insurer to engage in ex parte communications with healthcare providers about a claimant's medical information, without the claimant's knowledge. Malcomson , ¶ 3. While we recognized that a claimant receiving compensation benefits "waives any privilege of confidentiality as to [her] healthcare information which is relevant to the subject matter of her claim," Malcomson , ¶ 27 (citing Linton v. Great Falls , 230 Mont. 122, 749 P.2d 55 (1988) ), we nonetheless reasoned that such a waiver "does not mean the worker loses all privacy interests in how that information is circulated or disseminated." Malcomson , ¶ 29. We concluded that § 39-71-604, MCA, was not narrowly tailored to effectuate the State's interest in the orderly administration of the workers' compensation system, and was thus unconstitutional, to the extent it gave authority to insurers beyond what was necessary to pursue their "legitimate interest in engaging in ex parte contact with healthcare providers" for administration of the claim handling process. Malcomson , ¶¶ 30, 33.
¶ 21 Robinson argues that, as with the statute at issue in Malcomson , § 39-71-605(1), MCA, likewise fails the strict scrutiny test and is unconstitutional. Acknowledging our holding in Malcomson that "the ***186 State has a compelling interest in the orderly administration of the workers' compensation process," Malcomson , ¶ 25, Robinson concedes § 39-71-605(1), MCA, satisfies the first prong of the strict scrutiny analysis, but contends it is not narrowly tailored because it allows insurers to "compel attendance at serial IMEs, with no showing of good cause," and thus fails under the second prong. In order to remedy the statute's asserted unconstitutional effect, Robinson urges the Court to impose the same good cause requirement applied to IMEs in civil litigation, as set forth in M. R. Civ. P. 35, to IMEs in workers' compensation cases, which would permit IMEs only upon a court order made after a showing of good cause. Robinson argues "[s]uch a rule would provide a more narrowly-tailored means of protecting the State's interest than does § 39-71-605," and cites our orders vacating district court orders requiring an IME in *75 Simms v. Mont. Eighteenth Judicial Dist. Ct. , 2003 MT 89, 315 Mont. 135, 68 P.3d 678, and Lewis v. Mont. Eighth Judicial Dist. Ct. , 2012 MT 200, 366 Mont. 217, 286 P.3d 577.
¶ 22 First, the particular constitutional inadequacy of the statute at issue in Malcomson -a failure to be narrowly tailored to effectuate only the State's compelling interest in obtaining a claimant's medical information-is not present here. Robinson was kept informed throughout the process and her medical information was not obtained or disseminated without her knowledge. Robinson was privy to the IME process and participated in the examination.
¶ 23 The provision Robinson challenges is part of the statutory structure of the workers' compensation system, which operates differently than the civil litigation at issue in Simms and Lewis . The workers' compensation system presumes injury without proof of fault and requires payment of stated medical and other benefits. We discussed M. R. Civ. P. 35, and noted the distinctions between workers' compensation and civil litigation, in Linton , 230 Mont. at 132-33, 749 P.2d at 62 ("The Workers' Compensation Act is withdrawn from private controversies because of the unique status of the Act as a humanitarian, quasi-judicial legislative creation of several special provisions applicable only to injured workers covered by the law."). The Legislature intends the workers' compensation system to "be primarily self-administering" and designed it "to minimize reliance upon lawyers and the courts." Section 39-71-105(4), MCA. The challenged provision helps further this mandate by allowing insurers to obtain IMEs without having to petition the court, make a showing of good cause, and obtain an order.
¶ 24 The statutory scheme balances this procedure by providing protections to claimants. Section 39-71-605(1)(b), MCA, requires IMEs ***187 to be scheduled "with regard for the employee's convenience, physical condition, and ability to attend at the time and place that is as close to the employee's residence as practical," and provides that a claimant "is entitled to have a physician present at any examination." Further, while an objecting claimant who refuses to attend an examination may be subject to suspension of her benefits, that suspension is a "termination of compensation benefits" subject to an order by the Department granting interim benefits to the claimant pending further review of the dispute by the Workers' Compensation Court. Section 39-71-607, -610, MCA. Thus, a claimant who believes an insurer is abusing the IME process can seek this relief. These provisions help to narrowly tailor the statute to guard against an insurer's abusive use of IMEs in the workers' compensation context. Ultimately, a claimant also has remedies against an abusive insurer under the common law of bad faith. White v. State , 2013 MT 187, ¶ 24, 371 Mont. 1, 305 P.3d 795 (citations omitted).
¶ 25 Thus, the challenged provision does not undermine a claimant's rights in her medical information, as in Malcomson , and an IME is obtained pursuant to a claimant's waiver of confidentiality for purposes of the administration of her claim. The statutory framework includes protections for a claimant to prevent an insurer from seeking IMEs abusively. We conclude that the provisions of § 39-71-605(1), MCA, challenged by Robinson are justified by the State's compelling interest in the orderly administration of the workers' compensation process, and sufficiently narrowly tailored to effectuate only that interest. Robinson has not established there is "no set of circumstances ... under which the [challenged sections] would be valid, i.e., that the law is unconstitutional in all of its applications," and therefore, they do not facially violate the right of privacy. Cannabis Indus. Ass'n , ¶ 14. As applied to Robinson, we first note she did not challenge the second IME by pursuing relief from the Workers' Compensation Court, as provided by statute. Then, the record indicates State Fund's second IME occurred seven years after Robinson's injury, that Robinson was still receiving treatment from multiple medical providers, and it had not been made clear to State Fund that Robinson's providers were treating her pursuant to a treatment plan. Under these undisputed circumstances, the record does not support Robinson's as-applied constitutional challenge to the statute's authorization of a subsequent IME as a violation of her right to privacy.
*76 b. Substantive Due Process
¶ 26 Robinson argues that the authorization given by § 39-71-605, MCA, for State Fund to order an additional IME was an unreasonable ***188 government action that violated the right of substantive due process under the Montana Constitution, which provides: "No person shall be deprived of life, liberty, or property without due process of law." Mont. Const. art. II, § 17. "In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective." Walters , ¶ 18 (citations omitted). We analyze a substantive due process challenge to a statute in two steps, considering: "(1) whether the legislation in question is related to a legitimate governmental concern, and (2) that the means chosen by the Legislature to accomplish its objective are reasonably related to the result sought to be attained." Plumb v. Fourth Judicial Dist. Ct. , 279 Mont. 363, 372, 927 P.2d 1011, 1016 (1996).
¶ 27 In our above discussion of the first issue herein, and in previous cases, we have acknowledged the government's legitimate concern in an "orderly" workers' compensation process, Malcomson , ¶ 14, that "promote[s] the continued economic welfare of employers who pay into the State Fund and the welfare of employees who receive compensation benefits." Walters , ¶ 28 (citations omitted). Addressing a previous substantive due process challenge to the Workers' Compensation Act, we identified "improving the financial viability of the system, controlling costs of the system, and providing benefits" as legitimate governmental objectives of the Act. Walters , ¶ 28 (citations and internal quotations omitted).
¶ 28 The challenged statute and the broader Workers' Compensation Act, as we recognized above, provide parameters on the IME process, including a mechanism for a claimant to challenge an abusive IME. The IME process is clearly related to the government's concern for effectively administering the workers' compensation process, permitting an insurer to request an IME without first petitioning the court, proving good cause, and obtaining an order, and is reasonably related to the legitimate government objective of promoting efficiency and self-reliance in the workers' compensation process. Therefore, we conclude the challenged provisions of § 39-71-605, MCA, do not violate the right of substantive due process, either facially or as applied to Robinson.
c. Unreasonable Searches
¶ 29 Robinson argues that "repetitive IMEs is a means of gathering evidence," and thus, constitutes an unreasonable government search in violation of Article II, Section 11 of the Montana Constitution and the Fourth Amendment of the United States Constitution. The Montana Constitution provides: "The people shall be secure in their ***189 persons, papers, homes and effects from unreasonable searches and seizures." Mont. Const. art. II, § 11. We have long considered a warrantless search to be "per se unreasonable." State v. Hamilton , 2003 MT 71, ¶ 34, 314 Mont. 507, 67 P.3d 871.
¶ 30 However, Robinson offers no authority to support the proposition that an IME-a medical examination ordered in the course of the administration of her workers' compensation claim-is a "search" for purposes of Article II, Section 11 of the Montana Constitution. As we noted above, the context here is a civil matter in which the claimant has waived confidentiality to her healthcare information for purposes relevant to her claim with State Fund. Under this framework, Robinson agreed to submit to medical examinations appropriate to the handling of her claim. As discussed above, the statute places parameters on the IME process, which are reasonably related to fulfilling the Legislature's goal of administering the workers' compensation process in an orderly fashion, and which provide a remedy for a claimant to contest an abusive IME.
¶ 31 Robinson has failed to prove beyond a reasonable doubt that § 39-71-605, MCA, is facially unconstitutional. Williams , ¶ 23. Furthermore, Robinson has failed to establish that any action taken by State Fund pursuant to the statute in her case deprived her of any constitutional protections. Therefore, we conclude that § 39-71-605, MCA, is neither facially unconstitutional nor unconstitutional *77 as applied in Robinson's case, and the District Court properly dismissed the claims.
¶ 32 2. Did the District Court err by denying Robinson's constitutional tort claim?
¶ 33 In her Second Amended Complaint, Robinson argued broadly that State Fund, acting under authority granted it by state law,[2] violated her constitutional rights to dignity, privacy, health, due process, and freedom from unreasonable searches, and, in so doing committed a constitutional tort against her, citing Dorwart v. Caraway , 2002 MT 240, 312 Mont. 1, 58 P.3d 128. In Sunburst School Dist. No. 2 v. Texaco, Inc. , 2007 MT 183, 338 Mont. 259, 165 P.3d 1079, we explained "the absence of any other remedy [had] supported the establishment of a constitutional tort" in Dorwart , but that a constitutional tort will not lie where "adequate remedies exist under the statutory or common law." Sunburst , ¶ 64.
¶ 34 Government entities are liable for torts committed by their ***190 officers, employees, and agents. Section 2-9-101, MCA. With regard to enforcement of a statute that is subsequently declared to be unconstitutional, a government officer, employee or agent is entitled to immunity in a civil action if they acted to enforce the statute "in good faith, without malice or corruption, and under the authority of law." Section 2-9-103(1), MCA.
¶ 35 However, we need not address the existence of alternate remedies or good faith immunity, as we have already determined that no constitutional violation occurred here. The constitutional challenges brought by Robinson failed to establish that the challenged provisions of § 39-71-605, MCA, violated a provision of the Montana Constitution, and, consequently, Robinson's constitutional rights were not violated by State Fund's action in seeking a second IME. Therefore, there is no basis to claim a constitutional tort and the District Court correctly dismissed the claim. Having affirmed the dismissal of all of Robinson's claims, there is no basis for her request for attorney fees.
¶ 36 Affirmed.
We concur:
DIRK M. SANDEFUR, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.
LAURIE McKINNON, J.

The District Court concluded that Robinson "brought an as applied, not facial, constitutional challenge to the statute." Robinson challenges this conclusion on appeal, arguing that she challenged the statute in both ways. As the District Court noted, "the distinction is not without significance." As we have stated, "[a]nalysis of a facial challenge to a statute differs from that of an as-applied challenge." To prevail on a facial challenge to a statute's constitutionality, the challenger "must show that 'no set of circumstances exists under which the [challenged sections] would be valid, i.e., that the law is unconstitutional in all of its applications.' " Cannabis Indus. Ass'n v. State , 2016 MT 44, ¶ 14, 382 Mont. 256, 368 P.3d 1131 (quoting Wash. State Grange v. Wash. State Republican Party , 552 U.S. 442, 449, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008) ). Although Robinson's complaint expressly asserted the statute was invalid "as applied," other allegations of the complaint were stated more broadly, albeit without being labeled a "facial" challenge. State Fund responds to Robinson's as-applied and facial arguments, and our analysis likewise incorporates both.

On appeal, Robinson does not contest the District Court's determination that State Fund is a government agency for purposes of this issue.